IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-01786-WDM-CBS

THE ESTATE OF STEPHEN BEGAN,

    Plaintiff,

v.

LAKE COUNTY, COLORADO SHERIFF'S OFFICE, et al.,

    Defendants.

## ORDER ON MOTIONS TO DISMISS

Miller, J.

This matter is before me on the Motion to Dismiss (doc no 45) filed by Defendants St. Vincent General Hospital District ("Hospital") and John M. Jennings, PA-C (together, the "Hospital Defendants") and the Motion to Dismiss (doc no 48) filed by Defendants Lake County Sheriff Ed Holte, Undersheriff Blackford, Deputies Ed Reinhardt, Jason Shannon, Travis Arnett, Steve James and William Swango (collectively, the "Sheriff Defendants"). Plaintiff opposes the motions. I have reviewed the complaint and the parties' written arguments and conclude that oral argument is not required. For the reasons set forth below, the Hospital Defendants' motion will be granted in part and denied in part. The Sheriff Defendants' motion will be denied.

## Background

As alleged in the Second Amended Complaint, the facts underlying this case are as follows: Plaintiff's decedent, Stephen Began ("Began"), was found passed out on the ground near a step in front of his former residence on August 24, 2006 around 11:15 p.m.

Leadville, Colorado police officers and Lake County Sheriff's officers determined that he was intoxicated and took him into protective custody. Efforts to revive Began were only marginally successful; he was unable to walk or communicate and was making strange noises such as grunting, moaning and coughing. The officers took Began to the Hospital around 11:30 p.m. to have him medically cleared to place him in the Lake County jail facility for detoxification. While at the Hospital, Began was bleeding from the nose and was still unable to walk on his own or to communicate. He was examined by Jennings, a physician's assistant, who released him to the jail facility at around 11:53 p.m. Began was not given a CT scan or monitored for more than approximately 20 minutes. No test to determine Began's blood alcohol content was administered.

The Hospital's discharge instructions to Leadville police officer Troy Hardwick advised that Began should be returned to the Hospital if he vomited. In addition, officers were advised to carefully watch Began while in detoxification for vomiting in his sleep. At the jail, Began was observed at varying intervals; it was noted that Began was vomiting within the first two hours and 15 minutes of protective custody but was not returned to the Hospital. Observations of Began through the next day showed that he continued to be unresponsive, unable to walk, and was vomiting, urinating, and defecating on himself. At 6:09 p.m. on August 25, 2006, an ambulance was called to take Began back to the Hospital. He was found then to have suffered skull fractures, a massive subdural hematoma and multifocal subarachnoid hemorrhage. Began was airlifted to another hospital but was found to be brain dead and was thereafter taken off life support.

Plaintiff, Began's Estate, asserts the following claims in this lawsuit: (1) 42 U.S.C. § 1983 claim for violation of Began's constitutional rights under the Fourteenth and Eighth

Amendments to adequate medical treatment against the deputies and other jail personnel; (2) violation of Began's constitutional rights under the Eighth Amendment to humane conditions of confinement against the deputies and other jail personnel; (3) violation of Began's constitutional rights under the Fourteenth and Eighth Amendments to adequate medical treatment and humane conditions of confinement against the Lake County Sheriff Ed Holte and Lake County Undersheriff Blackford (and various John and Jane Does) for failure to train and supervise; (4) violation of Began's constitutional rights under the Fourteenth and Eighth Amendments to adequate medical treatment against the Hospital Defendants; (5) violation of Began's constitutional rights under the Fourteenth and Eighth Amendments to adequate medical treatment against the Hospital for failure to train and supervise; (6) violation of Began's constitutional rights under the Fourteenth and Eighth Amendments to adequate medical treatment against supervisory personnel for failure to train and supervise; and (7) state law negligence claim against the Hospital Defendants.

## Standard of Review

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

I begin by addressing Began's status. There is some dispute about whether Began was entitled to Eighth Amendment protections against cruel and unusual punishment since

3

he was not a prisoner convicted of a crime, but rather had been placed in protective custody so that he would not be a danger to himself or others. It is well established that the due process clause of the Fourteenth Amendment imposes on state officials a duty to protect individuals whom they have taken involuntarily into their physical custody and control. *Liebson v. New Mexico Corr. Dep't*, 73 F.3d 274, 277 (10th Cir. 1996) (citations omitted). Thus, "pretrial detainees are entitled under the fourteenth amendment's due process clause to the same degree of protection regarding medical attention afforded convicted inmates under the eighth amendment." *Martin v. Bd. of County Comm'rs*, 909 F.2d 402, 406 (10th Cir.1990). The Tenth Circuit has assumed without deciding that an individual taken into protective custody such as Began can be considered a pretrial detainee. *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998). Began's status is also closely related to that of a person involuntarily committed to a mental health institution; such persons are also guaranteed substantive due process protections from harm and to adequate medical care. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). Regardless of which framework applies, however, it is clear that Began had a constitutional right to adequate medical care from which liability can attach upon a showing of deliberate indifference. *See Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th Cir. 1990) (detainee cannot demonstrate a violation of substantive due process upon a lesser showing than deliberate indifference to serious medical needs). Accordingly, I will apply the two-part test customarily applied for claims of inadequate medical care under the Eighth Amendment.

    1.    <u>Hospital Defendants</u>

The Hospital Defendants argue that Plaintiff's claims fail against them because they

did not deprive Began of a constitutionally protected right.  These defendants appear to concede that a person in custody has a right to adequate medical treatment but argue that Began received medical treatment and that the Hospital Defendants were not deliberately indifferent.

It is well established that prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted).  However, a claim based on "an inadvertent failure to provide adequate medical care" or alleging "that a physician has been negligent in diagnosing or treating a medical condition" does not state a valid claim of medical mistreatment under the Eighth Amendment.  *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (citations omitted). "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 106).

To demonstrate an Eighth Amendment violation, an inmate must satisfy both objective and subjective elements.  The objective component is met if the deprivation is "sufficiently serious," i.e., one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir .1999)).

The subjective component of the deliberate indifference test is met if the defendant "knows of and disregards an excessive risk to inmate health or safety."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  A prison medical professional who

"knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if that person delays or refuses to fulfill that gatekeeper role. *Id.* at 1211. "Deliberate indifference" does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (citations omitted).[1]

The Hospital Defendants do not contest the seriousness of Began's condition. However, they argue that Plaintiff's allegations do not demonstrate deliberate indifference because Jennings examined Began and instructed the officers to return Began if he began to vomit.

In *Self v. Crum,* the Tenth Circuit again emphasized that mere negligent misdiagnosis of non-specific symptoms, which were appropriately treated given the physician's understanding of the underlying condition, is not enough to permit an inference that the doctor consciously disregarded an inmate's medical emergency. 439 F.3d at 1232-33 ("where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law"). *Self* also set forth typical fact situations demonstrating "obviousness in the circumstances of a missed diagnosis or delayed referral," including "(1) a medical professional recognizes an inability to treat the patient due to the seriousness

---

[1]The Hospital Defendants have cited an inapplicable Fifth Circuit case, *Thompson v. Upshur County, Tex.,* 245 F.3d 447 (5th Cir. 2001), in order to argue that Plaintiff must demonstrate that Defendants must intend that harm occur. As discussed above, an intent to harm is not the standard under Tenth Circuit case law.

of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, e.g., a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, e.g., a gangrenous hand or a serious laceration; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, e.g., a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell." 439 F.3d at 1242 (punctuation and citations omitted).

Giving Plaintiff the benefit of all favorable inferences, I conclude that Plaintiff has alleged sufficient facts that, if believed, could demonstrate that Began's symptoms were so indicative of a serious medical condition that Jennings' failure to treat, or to continue monitoring Began directly, constituted deliberate indifference. As noted by Plaintiff, according to the allegations in the Second Amended Complaint, Began was found on the ground, was unable to walk and was incoherent, stated that he was experiencing pain, and was bleeding from the nose. These circumstances and symptoms do indeed suggest a head injury, even to a lay person, and the failure to properly monitor and treat such an injury would be dangerous. In addition, a reasonable jury could find that Jennings was deliberately indifferent by releasing Began, not to caring family members or a medical detox facility, but rather to a jail, where his condition might not be well monitored, without doing any diagnostic testing to rule out a head injury or to determine the cause of the nosebleed. These facts are similar to those scenarios identified in *Self* and could plausibly demonstrate

deliberate indifference.

The Hospital Defendants also contend that Plaintiff's fifth claim, which I construe to be a claim of governmental entity liability, fails because Plaintiff has failed to provide evidence regarding the Hospital's failure to train or supervise. A municipality or other governmental entity may be subjected to liability under § 1983 where the action alleged to be unconstitutional executes or implements a governmental policy or custom. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). The Hospital would not be liable under section 1983 solely because its employee inflicted injury. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *Monell*). Rather, Hospital liability would require (1) the existence of a policy or custom; and (2) a direct causal link between the policy or custom and the injury alleged. *Id.* (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989)). "When the claim is a failure to act, the plaintiff must demonstrate the [governmental entity's] inaction was the result of 'deliberate indifference' to the rights of its inhabitants." *Id.* (punctuation omitted). Under Tenth Circuit law, the deliberate indifference standard may be satisfied "when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999); *see also Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) (a supervisor or municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable).

Again, granting Plaintiff the benefit of all favorable inferences, I conclude that Plaintiff's facts could plausibly demonstrate that the harm to Plaintiff resulted from the

8

Hospital's failure to develop adequate protocols for this type of situation or to provide appropriate staffing in its emergency room. In addition, given that there was apparently a common practice of bringing intoxicated individuals to the Hospital for medical examination before putting them in detox, Plaintiff may be able to show that there was an obvious need for such protocols. Accordingly, this claim should not be dismissed.

The sixth claim does not appear to be materially different from the fifth claim, except that it was also asserted against an individual physician supervising Jennings, who is no longer a defendant in this claim. It is also asserted against various John and Jane Does, apparently asserting individual liability against these defendants for failure to train and supervise. As asserted against the Hospital, the sixth claim appears to be duplicative of the fifth claim and no individual defendants have yet been named. Accordingly, it appears to me that the sixth claim is no longer at issue.

The Hospital Defendants also contend that the seventh claim (state law negligence) fails to the extent that Plaintiff seeks certain damages. I agree. Plaintiff's claim is a survival action, not a wrongful death claim on behalf of the statutory heirs of Began. *Rowell v. Clifford*, 976 P.2d 363, 364 (Colo. App. 1998) (provision creating cause of action for wrongful death is separate and distinct from the action that the injured person would have had for personal injuries if he or she had survived). Accordingly, the state law claims are governed by the Colorado Survival of Actions statute, C.R.S. § 13-20-101. This section limits damages for tort actions to "loss of earnings and expenses sustained or incurred prior to death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death." C.R.S. § 13-20-101(1). Accordingly, to the extent that Plaintiff seeks damages for Began's pain, suffering, or disfigurement, or

9

prospective profits or earnings after Began's date of death, these damages are barred for the state law tort claim.

    2.    <u>Sheriff Defendants</u>

The Sheriff Defendants first argue that all Eighth Amendment claims must be dismissed because Began was not an incarcerated prisoner. As discussed above, Plaintiff's constitutional rights derive from the Fourteenth Amendment, but are analytically the same as an Eighth Amendment claim. Regardless of the source, there is no dispute that Began had a constitutionally protected right to adequate medical care and humane conditions of confinement and his claims are viable on that basis.

The Sheriff Defendants next contend that the third claim should be dismissed to the extent that it is asserted against Sheriff Holte and Undersheriff Blackford in their individual capacities and in their official capacities. Specifically, they argue that Plaintiff has not alleged any specific actions by these defendants that show personal participation in any constitutional violation and, moreover, that Plaintiff cannot show that a failure to train or supervise amounting to deliberate indifference.

To establish individual supervisory liability, a plaintiff must establish a "deliberate, intentional act" by a supervisor such that there is a "sufficient causal connection" between the supervisor and the constitutional violation. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Mere negligence is not sufficient to establish liability. *Id.* Rather, a plaintiff must show active participation or acquiescence through personal participation, exercise of control or direction, failure to supervise, or tacit authorization of the offending acts. *Id.* at 1152-53. If a sheriff is responsible for proper management of a jail, the sheriff maybe accountable if he "knew or should have known of the misconduct,

and yet failed to prevent future harm." *Meade,* 841 F.2d at 1528 (citations omitted).

Under Colorado law, sheriffs have the authority and responsibility to oversee county jails. C.R.S. § 30-10-511. Colorado courts have determined that a sheriff, not the board of commissioners, is the legal entity responsible for tortious behavior by a deputy sheriff. *Tunget v. Board of County Comm'rs of Delta County*, 992 P.2d 650, 651-52 (Colo. App. 1999). A sheriff, then, is often the final policymaker for matters concerning the operations of a county jail. *See, e.g., Cortese v. Black*, 838 F.Supp. 485, 496 (D.Colo. 1993). In general, an action against a sheriff in his official capacity is essentially an action against the entity that employs him–i.e., the county. *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

Plaintiff alleges that Sheriff Holte and Undersheriff Blackford were the final policy makers and supervisors for the jail and had the duty to create and implement policies and training sufficient to prevent harm to intoxicated persons in protective custody. It appears that many of the omissions that occurred at the jail, including not following or transmitting the discharge instructions from the Hospital, not recognizing signs of severe injury, not monitoring persons in protective custody, and other failures could have been the result of inadequate training, supervision, or policy implementation. It is also plausible that having intoxicated or injured persons in the jail would not be unusual, which should have put policymakers on notice that training and policies were needed. Accordingly, I conclude that the allegations are sufficient to establish liability against these defendants in their individual and/or official capacities for failure to train and/or supervise.

Finally, Defendants appear to argue that Plaintiff's claim that Began was subjected to unconstitutionally unsafe and unsanitary conditions of confinement must fail because

Began was subjected to such conditions for a short period of time (less than one day). I disagree. The elements to be satisfied for such a claim are essentially the same as those for a claim of failure to provide adequate medical treatment: a plaintiff must establish that (1) the condition complained of is "sufficiently serious" to implicate constitutional protection; and (2) prison officials acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Again construing the alleged facts in the light most favorable to Plaintiff, I conclude that the allegations, if credited by a reasonable jury, would be sufficient to establish that the conditions to which Began was exposed were serious enough to warrant constitutional protection. *See DeSpain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (conditions are sufficiently serious if they pose a substantial risk of serious harm to inmate health or safety; exposure to human waste, even for a short duration, carries "particular weight" in the conditions calculus because of the attendant health concerns). According to Plaintiff, Began was left in his own vomit, urine, and fecal matter for some time, which poses a substantial risk of harm. Moreover, there are sufficient allegations indicating that the jail personnel were aware of these conditions. Dismissal is therefore not appropriate at this stage.

Accordingly, it is ordered:

1. The Motion to Dismiss (doc no 45) filed by Defendants St. Vincent General Hospital District and John M. Jennings, PA-C, is granted to the extent that Plaintiff seeks damages barred by the Colorado Survival of Actions statute, C.R.S. § 13-20-101. Otherwise, the motion is denied and Plaintiff's claims against these defendants remain pending.

2. The Motion to Dismiss (doc no 48) filed by Defendants Lake County Sheriff Ed Holte, Undersheriff Blackford, Deputies Ed Reinhardt, Jason Shannon, Travis Arnett, Steve James and William Swango is denied.

DATED at Denver, Colorado, on July 3, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge